UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JENNY KARINA GUERRA GUTIERREZ DE GUERRA, | § § § | |
| Petitioner, | § § | |
| | § | CIVIL ACTION NO. 1:26-CV-327 |
| VS. | § § | |
| WARDEN, PORT ISABEL SERVICE PROCESSING CENTER, *et al.,* | § § § | |
| | § | |
| Respondents. | § | |

## ORDER AND OPINION

Petitioner Jenny Karina Guerra Gutierrez de Guerra is a Guatemalan national who is currently detained by Immigration and Customs Enforcement officials. Petitioner has protection from removal to Guatemala, but Respondents indicate they plan to remove her to Mexico. In this habeas action, Petitioner challenges Respondents' third-country removal procedures and requests her immediate release from detention on multiple grounds. She also challenges a fine that Respondents assessed against her.

Respondents move for summary judgment on all claims and request that the Court deny the petition for writ of habeas corpus. After considering the applicable law and the record in this case, the Court concludes that Petitioner has demonstrated that the law requires injunctive relief of a limited nature, and that Respondents are entitled to summary judgment on the remainder of Petitioner's claims.

## I.     Factual and Procedural Background

Petitioner is a Guatemalan national. She has twice fled her native country with her minor daughter due to threats of violence and abuse. In the first instance, they fled to Mexico, where government officials placed them in the custody of a cartel. The cartel threatened to kill them if Petitioner's family did not pay a ransom, and when the family made the payment, the cartel

1 / 15

released Petitioner and her daughter, but forced them to cross into the United States.  United States immigration officials quickly repatriated Petitioner and her daughter to Guatemala.

After returning to Guatemala, Petitioner again faced threats from the same gang and from her abuser.  In 2023, she and her daughter fled the country to the United States.  After a brief period of detention at the border, immigration officials released them on an Order of Release on Recognizance (Doc. 16–4).

Petitioner and her daughter moved to Maryland, where Petitioner found employment. While there, Petitioner sought asylum and withholding of removal under 8 U.S.C. § 1231(b)(3) and under the Convention Against Torture, 8 C.F.R. § 208.18.  In August 2024, an Immigration Judge issued a Final Order of Removal as to Petitioner, but granted her withholding of removal to Guatemala under Section 1231(b)(3). (IJ Order, Doc. 5–1)  Going forward, Petitioner was required to complete periodic check-ins with ICE officials.

On October 8, 2025, when Petitioner appeared for a scheduled check-in, officers from Immigration and Customs Enforcement detained her.  The same day, officers served Petitioner with a Notice of Revocation of Release (Doc. 5–2, 2), indicating that her "order of supervision" had been revoked "based on a review of your official alien file and a determination that there are changed circumstances in your case."  The Notice also advised Petitioner that she would be "afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation." (*Id.*)  The interview occurred later that day, as reflected in the Interviewing ICE Officer's Memorandum summarizing the conversation with Petitioner. (*See* Alien Informal Interview, Doc. 16–8)  Still on the same day, Respondents also served Petitioner with a Notice of Removal (Doc. 16–7) indicating that ICE intended to remove her to Mexico, and with a Notice of Fee Assessment under 8 U.S.C. § 1815 (Doc. 5–6), reflecting an imposed fine of $5,000.

Two days later, Petitioner received a reasonable fear interview regarding Mexico, based on the third-country removal procedures outlined in a March 2025 Guidance Regarding Third Country Removals (Doc. 16–11) from then-Secretary of Homeland Security Kristi Noem. Under those procedures, DHS informs an individual of removal to a third country. If the individual affirmatively expresses a fear of removal to that country, immigration officials refer the individual to United States Citizenship and Immigration Services "for a screening for eligibility for protection under [8 U.S.C. § 1231(b)(3)] and the Convention Against Torture (CAT) for the country of removal." (*Id*.) Through the screening, USCIS determines "whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." (*Id*. at 2) "If USCIS determines that the alien has not met this standard," removal to the third country proceeds. In the present matter, the USCIS official interviewed Petitioner and determined that she "did not established that it is more likely than not that [she] will be persecuted or tortured in Mexico." (Third Country Screening Notice[1], Doc. 16–10) Petitioner has remained in detention since then.

On March 19, 2026, Petitioner filed her Petition for Writ of Habeas Corpus (Doc. 1), presenting a due process challenge to Respondents' third-country removal procedures and requesting her immediate release from detention. The following day, she requested a temporary restraining order based on her "imminent removal from the United States[,]" and requesting an injunction precluding her removal to Mexico. (Mot. for TRO, Doc. 3, 1)

On March 24, Petitioner filed an Amended Petition for Writ of Habeas Corpus (Doc. 5), alleging that on March 20, Respondents unsuccessfully attempted to remove her to Mexico. She retained her original allegations and added a new claim to challenge Respondents' authority to re-detain her and the legal basis of the $5,000 fine imposed on her.

---

[1] Petitioner did not receive notice of this determination until after she filed this habeas action.

On the same day of the Amended Petition's filing, the Court issued a Temporary Restraining Order (Doc. 6) prohibiting Respondents from removing or transferring Petitioner while it considered the arguments that she raised.  The Court later established a briefing schedule for the parties, and has extended the Temporary Restraining Order on two occasions to maintain the status quo while it considered the parties' arguments. (*See* Order, Doc. 8; Second TRO, Doc. 15; Third TRO, Doc. 19)

On April 10, Respondents indicated that Petitioner had been transferred to Louisiana before the Court's issuance of the first Temporary Restraining Order, and also moved for summary judgment on all claims.[2] (MSJ, Doc. 16)  Petitioner has submitted her Reply (Doc. 18) in support of her claims and in opposition to the summary judgment motion.

## II.    Standard of Review

To be entitled to the issuance of a writ of habeas corpus, the petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) ("[N]either habeas nor civil rights relief can be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." (quoting *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985) (per curiam))). The habeas petitioner bears the burden of proving that she is being held contrary to law, and because the habeas proceeding is civil in nature, the petitioner must satisfy her burden of proof by a preponderance of the evidence. *Parke v. Raley*, 506 U.S. 20, 31 (1992)); *see also Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).  A court considering a habeas petition must "determine the facts [ ] and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

---

[2] Petitioner's transfer to Louisiana does not defeat the Court's jurisdiction over this habeas action. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Ex parte Endo*, 323 U.S. 283, 304–05 (1944).

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Under Rule 56, the moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial burden of providing the court with a legal basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the moving party must inform the court of the basis for the motion and identify those portions of the record which demonstrate the absence of a genuine dispute of material fact and the appropriateness of judgment as a matter of law. *See id. at 333*. If the moving party carries its burden, the burden then shifts to the nonmoving party. *Id*. A court should grant summary judgment if the nonmoving party fails to rebut the showing made by the moving party. *Id*. at 323.

### III.    Analysis

Petitioner requests relief on multiple grounds.  First, she argues that Respondents' third country removal procedures violate her Fifth Amendment due process rights and the Administrative Procedure Act, 5 U.S.C. §§ 551–559.  Second, she alleges that Respondents detained her in 2025 in a manner that violated her due process rights and the APA.  Third, she claims that Respondents have no lawful basis to keep her in detention, requesting her immediate release under *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Finally, she alleges that the $5,000 fine that Respondents imposed on her under 8 U.S.C. § 1815 is inapplicable under the statute and unconstitutional under the Fifth and Eighth Amendments.

Respondents move for summary judgment and request that the Court deny the habeas petition.  They contend that they possess the statutory authority to detain Petitioner based on the Final Order of Removal, and that her continued detention does not violate *Zadvydas*.  They then

argue that the procedures that they employ for third-country removal of individuals satisfy statutory and constitutional obligations. And they defend the imposition of the $5,000 fine.

The Court addresses each of Petitioner's claims in turn, simultaneously considering whether she has demonstrated entitlement to the requested relief in habeas on each claim, and whether Respondents have demonstrated that the claims fail as a matter of law.

### A. Petitioner's Challenge to Her Re-Detention

Petitioner alleges that Respondents violated her rights under the Fifth Amendment and the APA by failing to follow federal regulations when re-detaining her in October 2025. In particular, she alleges that "Respondents violated ICE's own regulations by failing to provide Petitioner with a notice of the reasons for revoking her [order of supervised release], an interview and an opportunity to respond." (Am. Pet., Doc. 5, ¶ 91) She claims that Respondents failed to adhere to 8 C.F.R. § 241.4(l)(1) when revoking her release, in violation of the *Accardi* doctrine.

Respondents counter that Section 241.4(l)(1) is inapplicable because an immigration official originally released Petitioner on her own recognizance, rather than under an order of supervision. Alternatively, they contend that they nevertheless complied with the procedures applicable to individuals released under an order of supervision, and that Petitioner has not identified a "substantial prejudice" stemming from any claimed regulatory violation. (MSJ, Doc. 16, 9–10)

Here, Petitioner does not contest that she is subject to a Final Order of Removal. (*See* IJ Order, Doc. 5–1) Under 8 U.S.C. § 1231(a), the United States must detain an alien against whom such an order has issued. The statute prescribes time limits for the removal of the alien, *see* 8 U.S.C. § 1231(a)(2)(A), (a)(6), and under various circumstances, the United States can release an individual on an order of supervision, subject to conditions, *see* 8 U.S.C. § 1231(a)(3). Such release, however, does not "vacate[ ] or otherwise set aside" the final order of removal. *Johnson*

*v. Guzman Chavez*, 594 U.S. 523, 536 (2021).  And absent such release, Section 1231(a) authorizes the detention of the individual.

In the current matter, Petitioner was released on her own recognizance during her removal proceedings.  The proceedings continued, and in August 2024, an Immigration Judge issued a Final Order of Removal, but granted withholding of removal to Guatemala.  At that moment, Respondents could have proceeded with her removal to another country, as no party contests that the immigration statutes authorize a third-country removal under specified conditions. *See* 8 U.S.C. § 1231(b)(1).  Section 1231(a) authorized Petitioner's detention for the purpose of such removal.

As it turned out, Respondents did not decide to proceed with her removal until October 2025, identifying Mexico as the receiving nation.  The parties contest whether Respondents had to comply with the provisions of Section 241.4 when re-detaining Petitioner.  That provision grants the Executive Associate Commissioner the discretion "to revoke release and return to [DHS] custody an alien previously approved for release under the procedures in this section." 8 C.F.R. § 241.4(l)(2).  Upon the revocation of release, an individual "will be notified of the reasons for revocation of his or her release or parole" and "will be afforded an initial informal interview . . . to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1).  Here, irrespective of whether Section 241.4 applies, Respondents note that they provided such a notice and an informal interview in which Petitioner had the opportunity to challenge the grounds for the revocation of her release. (MSJ, Doc. 16, 7–8 (citing Notice, Doc. 16–6; Interview Summary, Doc. 16–8))  Petitioner challenges the sufficiency of the Notice and Petitioner's ability to prepare for the interview, (*see* Reply, Doc. 18, 15–16), but she does not cite any binding decision establishing the inadequacy of the Notice or the interview procedures that Respondents utilized. The record demonstrates that Respondents notified Petitioner that changed circumstances had led them to revoke the conditions of her release, and that she had the opportunity to present

arguments to contest her detention and request her release.  As Petitioner herself explains, a constitutionally adequate process requires, "at minimum, notice and an opportunity to be heard." (Reply, Doc. 18, 20)  Respondents afforded such notice and opportunity to Petitioner in this case. And Petitioner presents no binding authority establishing that Respondents had to comply with these procedures before re-detaining Petitioner, rather than upon her detention.

As a result, Petitioner has not demonstrated that Respondents violated her statutory or constitutional rights when re-detaining her based on the Final Order of Removal.

### B.  Challenge to Petitioner's Ongoing Detention

Petitioner alleges that her ongoing detention violates her rights under the Due Process Clause and that she is entitled to her immediate release under *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Both challenges fail.

Petitioner bases her due process argument on the grounds that she presents neither a flight risk nor a danger to the community. (Am. Pet., Doc. 5, ¶¶ 99–106).  But as Respondents observe, Petitioner is subject to a Final Order of Removal, which authorizes her detention under 8 U.S.C. § 1231(a)(6).

It is true that *Zadvydas* provides a legal theory by which an immigration detainee subject to a final order of removal can challenge prolonged detention as unconstitutional under the Fifth Amendment.  In that decision, the Supreme Court recognized that 8 U.S.C. § 1231(a) does not "authorize indefinite, perhaps permanent, detention." *Zadvydas*, 533 U.S. at 699.  In setting the boundaries of the statute, the Supreme Court explained that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*  As guidance for courts considering a habeas action, the Supreme Court recognized six months as a "presumptively reasonable period of detention" after the issuance of a final order of removal. *Id.* at 701.  Beyond that period, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with

evidence sufficient to rebut that showing." *Id.* As the period of post-removal-order detention lengthens beyond six months, the "'reasonably foreseeable future' conversely would have to shrink." *Id.*

In the present matter, Respondents have detained Petitioner since October 8, 2025, which narrowly exceeds the "presumptively reasonable" six-month period. Thus, to succeed on her *Zadvydas* claim, Petitioner must provide "good reason" that negates a significant likelihood of her removal in the reasonably foreseeable future. On this front, she argues that her challenges to Respondents' third country removal procedures will preclude her removal to Mexico, and that Petitioners have not demonstrated that they have secured the necessary travel documents for her removal to Mexico or that the country has agreed to receive her. (*See* Reply, Doc. 18, 12–13) As to the challenge of the third-country removal procedures, the Court concludes in the following section of this Order and Opinion that Respondents can proceed with Petitioner's removal to Mexico upon completing certain procedural safeguards. And the record reflects that Respondents have already provided those safeguards to Petitioner. In addition, Respondents contend that they stand ready to remove Petitioner to Mexico, but have been unable to do so based solely on the Court's injunctive relief and Petitioner's refusal to disembark the vehicle when Respondents attempted to remove her before this lawsuit commenced. (MSJ, Doc. 16, 6) Petitioner bears the burden to demonstrate that Respondents cannot effectuate her removal to Mexico, and she offers no evidence other than questioning whether Respondents' efforts will prove successful. Based on this record, the Court concludes that Petitioner fails to demonstrate that no significant likelihood exists of her removal to Mexico in the reasonably foreseeable future. As a result, Petitioner's request for an order requiring her immediate release based on *Zadvydas* fails.

### C. Third Country Removal Procedures

Petitioner alleges that Respondents' procedures for removing an alien to a third country fail to comport with the Due Process Clause of the Fifth Amendment and run afoul of the APA.

#### 1. Fifth Amendment Due Process Claim

Petitioner argues that the Due Process Clause requires that before her removal to a third country, she must be afforded a reasonable fear interview as to that country, as well as the opportunity to appeal a negative reasonable fear determination to an Immigration Judge. (Am Pet., Doc. 5 ¶¶70–84; Reply, Doc. 18, 5–12)  In support, Petitioner applies the balancing test that the Supreme Court established in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), arguing in part that the absence of review by an Immigration Judge exposes an individual to an unacceptably high risk of harm to her life.  She presents evidence that Immigration Judges reverse about 30% of negative reasonable fear determinations, revealing that asylum officials render incorrect decisions in a significant number of cases.  She claims that in her case, such an incorrect decision occurred, highlighting that the asylum officer rendered a negative reasonable fear determination despite her previous kidnapping that Mexican government officials facilitated.

In turn, Respondents argue that Petitioner has received all the procedural protections that the Fifth Amendment requires, and that this Court's decision in *Aranda-Gomez v. Bondi*, No. 1:25-cv-258 (S.D. Tex., Feb. 20, 2026), forecloses her argument.

In *Aranda-Gomez*, this Court considered due process challenges to Respondents' third-country removal procedures.  Those procedures entitle an individual subject to third-country removal to a reasonable fear interview before a USCIS officer, but do not provide for review of a negative determination.  In *Aranda-Gomez*, the Court concluded that this procedure satisfies due

process requirements.[3]  Here, Petitioner has received those procedural protections, and the Court affirms that they satisfy constitutional requirements.

Petitioner challenges the Court's conclusion in *Aranda-Gomez* on multiple grounds.  But these arguments are unavailing.  First, while the reversal-rate evidence that Petitioner presents indicates an elevated risk of erroneous deprivation in connection with the reasonable fear determination, the data does not alter the Court's previous conclusion in *Aranda-Gomez*. Assuming that the *Matthews* analysis applies to the issue, the risk of erroneous deprivation represents only one factor in the analysis.  And the data that Petitioner submits, while modestly in her favor, does not demand a different conclusion when considering the totality of the circumstances and the factors that form part of the *Matthews* analysis.

Petitioner also argues that Respondents, when providing a reasonable fear interview regarding a third-country removal, require proof of "fear . . . much higher than what is required in the credible fear or reasonable fear processes[.] " (Am. Pet., Doc. 23, ¶ 81)  The reasonable fear standard under 8 C.F.R. § 208.31(c) requires that the individual demonstrate a "reasonable possibility" of persecution or torture if removed to the country at issue.  But the Secretary's March 2025 guidance requires "noncitizens to show it is more likely than not they would be tortured or persecuted[,]" which aligns with the higher standard required to prevail in withholding of removal proceedings. (Am. Pet., Doc. 23, ¶ 81; *see also* 8 C.F.R. § 1208.16)  Petitioner argues that this elevated standard, along with the limited opportunity for individuals to prepare for a reasonable fear interview and abbreviated timeline in which to secure counsel, creates an "impossible standard with no real chance to meet that standard[.]" (Reply, Doc. 18, 6)

Petitioner's argument does not succeed.  An immigrant who has not been admitted to the country generally "has only those rights regarding admission that Congress has provided by

---

[3] The Court concluded that Respondents could not dispense with the reasonable fear interview as to a third country from which the Department of State had received "credible diplomatic assurances" that individuals removed to that country would not be persecuted or tortured.

statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 105 (2020). Congress has provided for third-country removal, *see* 8 U.S.C. § 1231(b)(1), and Respondents invoke that statutory authority here. Individuals in Petitioner's position "are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306, 313 (1950)). As this Court concluded in *Aranda-Gomez*, the March 2025 Guidance, to the extent that it provides for a reasonable fear interview, complies with the requirements of the Fifth Amendment. While Petitioner identifies additional protections that would benefit her—i.e., a lower standard of review, additional time to prepare—neither the Fifth Amendment nor the governing statutes require those protections.

### 2. APA Claim

Petitioner also argues that Respondents violated the APA by failing to follow the third-country removal procedures that they promulgated. In particular, Petitioner argues that Respondents' failure to "issue a fear determination to Petitioner before attempting to deport her to Mexico" constitutes "a clear violation of an agency rule and is thus by definition arbitrary and capricious." (Am. Pet., Doc. 5, ¶ 90) But Petitioner later acknowledges that she received notice of her negative reasonable fear determination, albeit only as an exhibit that Respondents filed in this case. (Reply, Doc. 18, 14–15) Given the factual development, the Court finds this issue moot.

### D. Challenge to Fine Imposed Under 8 U.S.C. § 1815

Petitioner challenges the $5,000 fine that Respondents imposed upon her based on Section 1815. She contends that the statute by its own terms cannot apply to her, and that even if it did, doing so would violate her constitutional rights under the Fifth and Eighth Amendments.

Congress enacted Section 1815 in July 2025, mandating that "the Secretary of Homeland Security shall require the payment of a fee, equal to the amount specified in subsection (b), by any inadmissible alien at the time such alien is apprehended between ports of entry." 8 U.S.C.

§ 1815(a).  In turn, subsection (b) sets the fee at "the greater of (A) $5,000; or (B) such amount as the Secretary of Homeland Security may establish, by rule." 8 U.S.C. § 1815(b)(1).

Petitioner construes the statute as requiring "two independent findings: (1) that the noncitizen was apprehended between ports of entry, and (2) that the noncitizen is inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)." (Am. Pet., Doc. 5, § 116)  She argues that her circumstances place her outside of these criteria because she "was not apprehended between ports of entry at the time DHS issued the fee assessment[,]" as her present detention began "during a routine, previously scheduled ICE check-in at the ICE building in Baltimore, not at or between ports of entry." (*Id*. at ¶ 117)  In addition to her statutory argument, Petitioner also argues that the fine is impermissible under the Fifth and Eighth Amendments because she received no notice or opportunity to challenge the fine, and the fine represents a penalty that is "grossly disproportionate" to her conduct of crossing the border unlawfully. (*Id*. at ¶ 121)  In support of these arguments, she cites to a district court decision that determined that a similar fee imposed under Section 1815 was unconstitutional. *See F.R.P. v. Wamsley*, No. 3:25-CV-01917-AN, 2026 WL 482184 (D. Or. Feb. 19, 2026).

As a threshold matter, Respondents contest that Petitioner can challenge the fine in a habeas action. (MSJ, Doc. 16, 11)  Although Respondents provide only cursory argument in support of this argument, the Court agrees.  A detained individual files a habeas action to contest her detention. 28 U.S.C. § 2241.  Courts also apply Section 2241 to consider certain constitutional challenges to the removal of a noncitizen, *see, e.g.*, *J.G.G.*, 145 S. Ct. at 1005 (citing cases summarizing relief available in habeas), but those cases also concern the detention and control over the individual.  In contrast, courts have recognized that an individual cannot utilize a habeas action to challenge an imposed fine. *See, e.g., Spring v. Caldwell*, 692 F.2d 994, 999 (5th Cir. 1982) (rejecting habeas jurisdiction where petitioner challenged only his fine).  While those cases

have arisen in criminal matters, the legal principle holds true in a civil context, such as this lawsuit. Petitioner's challenge of the imposed fine does not affect her detention or her removal.

It is true that in some circumstances, a court that sets aside a conviction within a habeas action can also "correct the unlawful result of the conviction[,]" such as a fine. *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973). Doing so avoids the necessity of the individual having to bring a separate action to vacate a fine that could not have been imposed, given the setting aside of the conviction that formed the basis of the fine. In the current case, however, Petitioner has not succeeded in her principal claims challenging her detention and the procedures for her removal to a third country. In essence, no need exists to "correct the unlawful result" of her detention or third-country removal, as the Court has not found in her favor on those issues. As a result, the Court finds that this case does not present the limited circumstances when courts have found it appropriate to allow a habeas petitioner to challenge an imposed fine.

## IV.    Conclusion

For these reasons, the Court concludes that Petitioner Jenny Karina Guerra Gutierrez de Guerra succeeds only to the extent that Respondents must provide her with the notice and reasonable fear interview described in the Secretary's 2025 Guidance before removing her to a third country. As to Mexico, the record reflects that Respondents have afforded Petitioner with these procedural protections. Still, in the event that Respondents do not proceed with removal of Petitioner to Mexico, but in the future desire to remove her to another country, the Court will enter a permanent injunction in accordance with this Order and Opinion. As a result, it is:

**ORDERED** that Petitioner Jenny Karina Guerra Gutierrez de Guerra's First Amended Petition for Writ of Habeas Corpus (Doc. 5) is **GRANTED IN PART AND DENIED IN PART**, as indicated in this Order and Opinion and within the Permanent Injunction that the Court will issue in connection with this Order and Opinion; and

**ORDERED** that Respondents' Motion for Summary Judgment (Doc. 16) is **GRANTED IN PART AND DENIED IN PART**, as indicated in this Order and Opinion and within the Permanent Injunction that the Court will issue in connection with this Order and Opinion.

Aside from the relief afforded Petitioner in the Court's Permanent Injunction, all other relief that she requests is **DENIED**.

This is a final and appealable Order.

Signed on April 30, 2026.

Fernando Rodriguez, Jr.
United States District Judge